UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MOSELEY P.,

      Plaintiff,

v.

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      Defendant.

Case No. 2:19-cv-21348
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

**I.    PROCEDURAL HISTORY**

On March 2, 2016, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that he has been disabled since July 22, 2014, due to

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity.

1

hypersomnia, fibromyalgia, glaucoma, high cholesterol, bursitis, major depressive disorder, Crohn's disease, attention deficit hyperactivity disorder ("ADHD"), social anxiety disorder, and agoraphobia. R. 243–60, 283. The applications were denied initially and upon reconsideration. R. 167–173, 176–79. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 183–84. Administrative Law Judge ("ALJ") Dennis O'Leary held a hearing on July 23, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 42–69. In a decision dated October 12, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 2014, Plaintiff's alleged disability onset date, through the date of the decision. R. 20–35. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 18, 2019. R. 20–35. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On October 27, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 17.[2] On October 28, 2020, the case was reassigned to the undersigned. ECF No. 18. The matter is now ripe for disposition.

## II.  LEGAL STANDARD

### A.  Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to

---

[2] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

4

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong

[Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

      **B.**      **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 37 years old on his alleged disability onset date. R. 33. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between July 22, 2014, his alleged disability onset date, and the date of the decision. R. 22.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: Crohn's disease, anxiety, depression, ankylosing spondylitis, and glaucoma. *Id.* The ALJ also found that Plaintiff's diagnosed impairments of sleep apnea and hypercholesterolemia were not severe. R. 22–23.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 23–25.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 25–32. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a user support analyst, a vehicle-

7

fare collector, and management trainee. R. 33.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 18,400 jobs as an addressing clerk; approximately 21,000 jobs as an order clerk; approximately 49,000 jobs as a charge-account clerk—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 34. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 22, 2014, his alleged disability onset date, through the date of the decision. R. 34–35.

Plaintiff disagrees with the ALJ's findings at steps two through five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 16. The Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 15.

**IV.   DISCUSSION**

Plaintiff argues that the ALJ erred when failing to discuss evidence of narcolepsy beginning at step two and throughout the sequential analysis, including failing to assess its impact on Plaintiff's RFC. *Plaintiff's Brief*, ECF No. 14; *Plaintiff's Reply Brief*, ECF No. 16. Plaintiff contends that the ALJ's failure in this regard renders the decision unsupported by substantial evidence and serves as a basis for remand. *Id.* This Court disagrees.

At step two, an ALJ determines whether the plaintiff has a "severe impairment" or

combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). "The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted). "So long as the ALJ rules in Plaintiff's favor by finding that any single impairment meets the severity threshold required at step two, any error the ALJ made in this determination was harmless." *Auriemma v. Colvin*, No. 13-5947, 2015 WL 5097902, at *6 (D.N.J. Aug. 31, 2015) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless."); *see also Hicks v. Colvin*, No. 2:15-cv-07221, 2016 WL 8674251, at *8 (D.N.J. Oct. 14, 2016) ("Even if the ALJ had in fact erred with respect to one of the impairments that she found to be non-severe, such error would be harmless since she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding.").

Here, the ALJ decided in Plaintiff's favor at step two, finding that Plaintiff's Crohn's disease, anxiety, depression, ankylosing spondylitis, and glaucoma were severe. R. 22. The ALJ also explained why Plaintiff's obstructive sleep apnea and hypercholesterolemia were not severe, including the fact that a sleep study had revealed that Plaintiff's sleep apnea was only mild:

> The claimant also has obstructive sleep apnea and hypercholesterolemia, which constitute only non-severe impairments (Ex. B1F at 7; Ex. B31F at 42). The evidence does not show that these conditions have more than a minimal impact on the claimant's ability to perform basic work activities. Rather, the evidence shows that the conditions were generally controlled through only conservative treatment and medication, with no evidence of any significant or ongoing functional limitations on the claimant. A sleep study also verified that the claimant's obstructive sleep apnea was only mild in nature (Ex. BlF at 7; Ex. BSF at 29). Without more, the claimant's obstructive sleep apnea and hypercholesterolemia do

9

>    not significantly limit the claimant's ability to perform basic work activities, and constitute only non-severe impairments.

R. 22–23. The ALJ went on to evaluate Plaintiff's impairments through the remainder of the five-step sequential evaluation. R. 22–35. Although the ALJ did not expressly consider narcolepsy at step two of the sequential evaluation, he did address Plaintiff's complaints of hypersomnia and sleepiness, symptoms that purportedly resulted from Plaintiff's narcolepsy. R. 26 (noting that Plaintiff alleges hypersomnia limit his ability to work and that Plaintiff "asserts that he has functional issues with energy, sleep, attention, perception, emotions, cognition, and calculations"), 29 (noting Plaintiff's complaints of, *inter alia*, "difficulties sleeping, hypersomnia, fatigue" but that Plaintiff achieved good results during treatment, including reporting that "his sleep was good"). In doing so, the ALJ explicitly considered the following evidence regarding these symptoms at step four:

>    I do note that the claimant underwent a cognitive evaluation with geriatric psychiatrist Kohmal Shah, M.D., on May 20, 2015, as well as a neurological consultation with Abraham Morganoff, M.D. (Ex. B9F at 2-4; Ex. B24F at 22-23). Reported symptoms included increased periods of sleep, sleep disturbances, overwhelming sleepiness, chronic fatigue, memory problems, passive suicidal ideation, depressed moods and low motivations approximately three to four times per month, and manic symptoms, including feeling elated, increased cleaning, and staying up late (Ex. B9F at 3; Ex. B24F at 22). Positive examination findings included impaired verbal fluency, aphasic presentation, and ability to initially recall only one of three objects (Ex. B9F at 3; Ex. B24F at 22).
>
>    Significantly, however, the claimant still scored twenty-eight out of thirty on a mini-mental status examination, and was also able to recall three of three objects with reinforcement (Ex. B9F at 3; Ex. B24F at 22). The claimant also demonstrated okay clock drawing, okay cube copying and trail test, and no impairment on confrontation naming (Ex. B24F at 22). The claimant also exhibited alertness, full orientation in all three spheres, no dysarthria, non-dyslexic presentation, and otherwise normal neurologic and mental status results, including normal motor strength, sensation, insight, judgment, higher cortical function, and language and speech fluency (Ex. B9F at 3).

R. 29–30. Considering Plaintiff's functional limitations, the ALJ crafted a RFC for sedentary work that restricted Plaintiff to "jobs that are simple and repetitive in nature[,]" "jobs that do not involve driving at night[,]" "jobs that do not involve working at heights or around heavy machinery[,]" and jobs that "required … proximity to a toilet for use when needed." R. 25; *see also* R. 32 ("[T]he above residual functional capacity assessment is supported by the entire record, including the claimant's testimony to the extent I find the testimony consistent with the longitudinal evidence of record, as well as the claimant's alleged impairments, both severe and non-severe."). Accordingly, even if the ALJ erred by not finding other severe impairments, including narcolepsy, any such error at step two is harmless based on this record. *See Salles*, 229 F. App'x at 145 n.2; *Hicks*, 2016 WL 8674251, at *8; *Auriemma*, 2015 WL 5097902, at *6.

Plaintiff nevertheless insists that the record reflects that he was diagnosed with narcolepsy and that the ALJ's failure to acknowledge or discuss this diagnosis and "to evaluate its impact on Plaintiff's ability to function" renders the ALJ's decision fatally flawed. *Plaintiff's Brief*, ECF No. 14, pp. 6–9 (citing, *inter alia*, *Rossingol v. Comm'r of Soc. Sec.*, No. 2:15-cv-105, 2016 WL 7130915, at *4–5 (D. N.J. Dec. 7, 2016); *Norton v. Colvin*, No. 3:15-cv-701, 2015 WL 6447760, at *10 (M.D. Penn. Oct. 26, 2015)); *Plaintiff's Reply Brief*, ECF No. 16, pp. 1–3 (same).

Plaintiff's argument is not well taken. It is true that an ALJ must evaluate all record evidence in making a disability determination. *See Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. Moreover, the ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. However, the ALJ is entitled to overlook evidence that is "neither pertinent, relevant nor probative." *Johnson v. Comm'r of Soc. Sec*., 529 F.3d 198,

11

204 (3d Cir. 2008); *see also Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) (rejecting the argument that the ALJ's failure to discuss x-rays required remand because "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record. Even in *Fargnoli*, the court conceded that it did not expect the ALJ to make reference to *every* piece of relevant information") (emphasis in the original).

Here, it is undisputed that the record refers to a diagnosis of narcolepsy. *See*, *e.g.*, R. 376–78, 411, 433–60, 518, 520, 594, 836. However, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Plaintiff points to a June 10, 2016, progress note authored by Nicole Daver, D.O., which comments that Plaintiff's fibromyalgia was "compounded" by his history of obsessive-compulsive disorder and narcolepsy, *Plaintiff's Brief*, ECF No. 14, p. 7 (citing R. 764, 767), However, Plaintiff does not identify specific functional limitations found by Dr. Daver or any other medical source that the ALJ failed to include in the RFC. *See generally id.*; *Plaintiff's Reply Brief*, ECF No. 16. As previously discussed, the ALJ specifically considered manifestations of narcolepsy complained of by Plaintiff—*i.e.,* hypersomnia, difficulty sleeping, fatigue—when fashioning the RFC. R. 25–32. Plaintiff cites to no medical evidence documenting how this condition impairs his functioning or results in greater or different restrictions than those found by the ALJ and which would lead to a different outcome. Accordingly, the ALJ's failure to expressly mention narcolepsy is, at most, harmless error and does not require remand. *See*

12

*Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case"); *Chetoka v. Colvin*, No. CIV.A. 13-941, 2014 WL 295035, at *13 (W.D. Pa. Jan. 27, 2014) ("Although Plaintiff is correct that the ALJ did not provide a discussion of her alleged sleep disturbances, hypertension, and bipolar disorder, this omission was not error. . . . None of the sources that examined Plaintiff or her medical records attributed any limitations to these alleged impairments.").

Finally, Plaintiff's reliance on the agency's Program Operations Manuel System ("POMS") as well as the *Rossingol* and *Norton* cases does not militate a different result. *See Plaintiff's Brief*, ECF No. 14, pp. 8 – 9 (citing *Rossingol*, 2016 WL 7130915, at *4–5, and *Norton*, 2015 WL 6447760, at *10); *Plaintiff's Reply Brief*, ECF No. 16, pp. 2–3 (complaining that "[e]ven though the medical evidence clearly establishes the presence of narcolepsy, Defendant did not address the applicability of POMS DI 24580.005"[3] and citing *Rossignol*, 2016

---

[3] Plaintiff specifically cites POMS DI 24580.0005(B), which addresses "Signs And Symptoms Of Narcolepsy," and which provides as follows:

> There are no physical abnormalities in narcolepsy, and with the exception of sleep studies, laboratory studies will be normal. The sleep symptoms will range from mild drowsiness to severe sleepiness in which the individuals spend the entire day drifting in and out of sleep, unable to work, play or supervise the home. Sleep periods range from a few seconds to 30 minutes. The sensation is described as ordinary but uncontrollable drowsiness. When observed by others, the sleep appears natural and is readily interrupted by stimuli. Once awakened, the narcoleptic patient is alert. Not all individuals will have all of the symptoms. Cataplexy, however, is observed in 70 percent of all cases, and its associated presence is ordinarily sufficient to establish narcolepsy, without laboratory sleep studies.

WL 7130915, at *5). As a preliminary matter, "[t]hese POMS . . . provisions do not aid [Plaintiff], however, because they lack the force of law and create no judicially-enforceable rights." *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007); *see also Burke v. Comm'r of Soc. Sec.*, No. CV 19-14148, 2020 WL 2989081, at *3 (D.N.J. June 4, 2020) ("[S]tatements in POMS do not have the force of law."). In addition, *Rossingol* and *Norton* are distinguishable from this case. The *Rossingol* court noted that the ALJ "did not find the Plaintiff's diagnosis of narcolepsy to be credible." *Rossignol*, 2016 WL 7130915, at *5. Conversely, in the instant case, as previously noted, the ALJ discussed Plaintiff's impairments and specifically considered Plaintiff's allegations of hypersomnia, difficulty sleeping, sleepiness, and fatigue when crafting the RFC. R. 25–32. In *Norton*, the court concluded that the ALJ "failed to analyze probative evidence" regarding the claimant's narcolepsy, including medical records that reflecting that a physician determined that certain prescription medication was "no longer effective" in controlling the claimant's narcolepsy and that Plaintiff "was not a candidate for other medications because of the potential for psychiatric side effects"). In contrast, here, Plaintiff concedes that Dr. Morganoff noted that prescribed medication "appears to be controlling his narcolepsy without side effects" and that Dr. Daver "lists Plaintiff as denying sleeping difficulties[.]" *Plaintiff's Brief*, ECF No. 14, p. 7 (citing R. 520, 764, 767); *see also* R. 729 (denying sleeping difficulties to Dr. Daver on March 6, 2018), 739 (denying sleeping difficulties to Dr. Daver on June 21, 2017), 749 (denying sleeping difficulties to Dr. Daver on March 27, 2017).

In short, for all these reasons, the ALJ's decision enjoys substantial support in the record.

---

POMS DI 24580.0005(B), https://secure.ssa.gov/apps10/poms.nsf/lnx/0424580005.

## V. CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  September 1, 2021                              *s/Norah McCann King*
                                                    NORAH McCANN KING
                                            UNITED STATES MAGISTRATE JUDGE